## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

SHAWN M. D.,                          )
                                           )
        **Plaintiff,**                )
                                           )
**vs.**                               )          **Case No. 18-CV-502-CVE-JFJ**
                                           )
**ANDREW M. SAUL,**                    )
**Commissioner of Social Security,**   )
                                           )
        **Defendant.**               )

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Shawn M. D. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

## I.     General Legal Standards and Standard of Review

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically

determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921.  *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail).  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.  In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See id.*  The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*  The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if the Court might have reached a different conclusion, the Commissioner's

decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 47-year-old female, applied for Title XVI supplemental security income benefits on August 19, 2015, alleging a disability onset date of December 1, 2002, later amended to August 19, 2015.  R. 10, 32, 146-155.  Plaintiff claimed she was unable to work due to conditions including Guillain-Barre syndrome, lumbar disc degeneration, stomach problems, restless leg syndrome, chronic bronchitis, and arthritis.  R. 181.  Plaintiff's claim for benefits was denied initially on January 22, 2016, and on reconsideration on April 7, 2016.  R. 53-75.  Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on October 16, 2017.  R. 29-52.  The ALJ issued a decision on December 22, 2017, denying benefits and finding Plaintiff not disabled because she was able to perform other work existing in the national economy.  R. 10-17.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of August 19, 2015.  R. 12.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the spine status post cervical surgery; and obesity.  *Id.*  He found Plaintiff's allegation of disability due to Guillain-Barre syndrome was non-severe, because her impairment resolved.  *Id.*  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 12-13.

After evaluating the objective and opinion evidence, along with Plaintiff's statements, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as follows:

[S]he can occasionally lift and/or carry twenty pounds, frequently ten pounds, stand and/or walk at least six hours out of an eight-hour workday, and sit at least six hours, except the claimant must avoid work about the shoulder level.

R. 13.  At step four, the ALJ found that Plaintiff had no past relevant work.  R. 16.  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other light exertion work, such as Cashier and Hand Packager.  R. 16-17.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  R. 17.  Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy.  *Id.*  Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.    Issues

Plaintiff raises two points of error in her challenge to the denial of benefits, which the undersigned re-organizes for clarity: (1) the ALJ erred at step two; and (2) the ALJ's physical RFC is not supported by substantial evidence.  ECF No. 13.

## IV.    Analysis

### A.    ALJ's Step-Two Analysis Was Adequate

Plaintiff argues that, at step two of the analysis, the ALJ failed to adequately consider all of Plaintiff's impairments, specifically, her left shoulder, elbow, arm, and hand problems.[1] Plaintiff fails to point to a specific error in the step-two analysis, apart from generally alleging the step-two analysis regarding her left shoulder/arm/hand pain was deficient.

---

[1] In the reply brief, Plaintiff alleges for the first time that the ALJ did not properly consider her lower back pain at step two.  The undersigned declines to address issues raised for the first time in a reply brief.  *See Martin K. Eby Const. Co., Inc. v. OneBeacon Ins. Co.*, 777 F.3d 1132, 1142 (10th Cir. 2015) ("'[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.'") (quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)).

Plaintiff's arguments are unavailing.  At step two, the ALJ found Plaintiff's "degenerative disc disease of the spine status post cervical surgery" was a severe impairment.  R. 12.  Although the ALJ did not summarize Plaintiff's history of problems with her left shoulder, elbow, arm, and hand at step two, he addressed those conditions in detail when determining the RFC.  R. 14-16.  The ALJ documented Plaintiff's history of left arm/index finger numbness and left shoulder pain beginning in 2015.  *Id.*  Plaintiff continued to seek treatment for those conditions, which led to an anterior cervical discectomy and fusion in January 2017.  R. 15 (citing R. 372 (surgical discharge notes)).  After her surgery, Plaintiff reported that her radicular symptoms had improved.  *Id.* (citing R. 537).  An x-ray taken in February 2017 showed normal alignment of the cervical vertebral bodies, with vertebral body height maintained and no fracture or suspicious bony lesion.  *Id.* (citing R. 329).  However, her left upper extremity pain and paresthesias returned, and in August 2017 Plaintiff underwent a left subacromial bursa shoulder injection.  R. 542-543.  In September 2017, Plaintiff reported "near 100% sustained improvement in shoulder pain" following the injection, even though she continued to report paresthesias and pain in the left upper extremity radiating to all fingers.  R. 15 (citing R. 539).   Examination revealed impingement signs at the left shoulder.  R. 540.  Her physician recommended continuing narcotic pain medication, a trial of Lyrica, a nerve conduction study, and physical therapy for the left shoulder.  R. 15 (citing R. 540).   The undersigned identifies no error in the ALJ's assessment of this condition.  Plaintiff is simply asking the court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172.

Moreover, given the fact that the ALJ found Plaintiff to have severe impairments and addressed or accounted for the impairments Plaintiff identified in her brief, the issue of whether the ALJ found *all* of Plaintiff's impairments to be severe is legally irrelevant.  *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter*

*v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

### B.     ALJ Reasonably Considered and Evaluated the Evidence Regarding Plaintiff's Physical Impairments

Plaintiff argues that, in determining the RFC, the ALJ improperly relied on the opinions of the state agency physical reviewers – Karl Boatman, M.D., and James Metcalf, M.D.  In January 2016, Dr. Boatman opined at the initial level that Plaintiff could perform the full range of light work.  R. 59-62.  In April 2016, at the reconsideration level, Dr. Metcalf reached the same conclusions.  R. 70-74.  The ALJ gave these opinions "great weight," because they were consistent with the evidence of record, were formulated within the relevant period, and additional evidence and hearing testimony did not reveal substantial changes or worsening of Plaintiff's lumbar degenerative disc disease.  R. 15-16.  However, the ALJ also considered Plaintiff's "more recent development of neck pain with radiculopathy to the left upper extremity in finding that she must avoid work performed above the shoulder level."  R. 16.  The ALJ noted that, although Plaintiff had undergone a successful cervical fusion, she reported residual pain requiring medication management and physical therapy.  *Id.*

Plaintiff alleges the agency reviewers' opinions are stale, because they were given prior to Plaintiff's worsening of her left shoulder and arm pain.  However, the ALJ noted the later records and adjusted the RFC to accommodate Plaintiff's neck and left upper extremity pain.  R. 16.  The ALJ also summarized the later records regarding Plaintiff's neck and left arm pain, cervical surgery, and her follow-up visits for ongoing pain and parathesias in the left upper extremity.  R. 15 (citing R. 329, 537, 539-540).  These records provide substantial evidence in support of the ALJ's assessment of the opinion evidence and the RFC.

Plaintiff argues the ALJ ignored that Plaintiff still exhibited impingement signs at her left shoulder following the August 2017 bursa injection, and that the latest records in Plaintiff's file date only to September 2017, less than one month following the shoulder injection.  Plaintiff contends that these limited records do not demonstrate she experienced a "permanent solution" to her shoulder pain.  ECF No. 13 at 5.  Plaintiff's arguments are not persuasive.  At the September 2017 follow-up visit, Plaintiff herself reported she experienced "near 100% sustained improvement in shoulder pain" from the bursa injection.  R. 539.  As for Plaintiff's argument that her shoulder improvement may not be permanent, it is Plaintiff's, not the Commissioner's, burden to provide medical evidence in support of the RFC.  *See* 20 C.F.R. § 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are . . . disabled.");  *Howard*, 379 F.3d at 949 (finding that, beyond the ALJ's duty to develop the record, "the agency's burden at step five does not include the burden to provide medical evidence in support of an RFC assessment").  In addition, contrary to Plaintiff's argument, the ALJ did not consider Plaintiff's arm pain completely remedied by the shoulder injection, as he limited her to no work requiring her to lift her arms above shoulder level due to "her residual symptoms and subjective reports."  R. 15.

Plaintiff further argues the ALJ misrepresented the record by summarizing Plaintiff's 2017 post-surgical records, then apparently describing 2016 treatment records as occurring "[t]hereafter," despite the fact that those records pre-date Plaintiff's cervical fusion.  R. 15. Although the ALJ's chronology is somewhat confusing, the undersigned identifies no misrepresentation of the record.  The 2016 records appear as the last exhibits in Plaintiff's administrative record, which may explain the ALJ's reference to those records as occurring "thereafter."  In any event, the ALJ did not misrepresent the dates of those treatment records, and Plaintiff points to no evidence to indicate the ALJ misunderstood the dates of those records or that the RFC determination was affected in any way by the ALJ's out-of-sequence presentation of those

treatment records.  *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (burden of showing harmful error normally falls upon party attacking agency's determination).  The undersigned identifies no reversible error.

Plaintiff further contends the ALJ erred by not including RFC limitations regarding handling, fingering, and feeling, in light of Plaintiff's complaints of radicular pain and numbness extending to the fingers.  In support of the need for such limitations, she points to September 2017 (post-surgical) MRI results showing left foraminal narrowing, which was mild at C3-C4 and C4-C5, moderate at C5-C6, and moderate-to-severe at C6-C7.  R. 540-541.  However, Plaintiff does not show that those findings resulted in any functional limitations in the use of her left hand.  It is not the diagnosis, but the resulting functional limitations that determine disability.  *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995).  The same progress notes that summarize those MRI results also note examination observations of 5/5 motor strength of bilateral upper extremities, normal deep tendon reflexes of 2+ symmetric, negative Spurling test, negative Hoffman test, and normal fine motor control, despite the left shoulder impingement.  R. 540 (September 1, 2017, progress notes).

Plaintiff additionally points to her subjective complaints of pain and prescriptions for pain relievers as evidence of her pain issues.  *See* R. 281, 589, 603, 606, 617.  While these records provide some support for her allegations of physical limitations due to pain, the issue for judicial review is whether the ALJ's decision is supported by substantial evidence, not whether Plaintiff's position is supported by substantial evidence.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g).  *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.") (citation omitted).  The cited records do not indicate the RFC is unsupported by substantial

evidence or that the ALJ's assessment of the medical evidence was flawed.  Plaintiff simply invites the court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172.  Because the undersigned identifies no error in the ALJ's formulation of the RFC, the ALJ's hypothetical question to the VE did not need to include limitations regarding handling, fingering, feeling, or reaching.  *See Shepherd v. Apfel*, 184 F.3d 1196, 1203 (10th Cir. 1999) ("The ALJ is only required to ask hypotheticals encompassing impairments that find support in the record.").[2]

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by February 13, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions."  *United States v.*

---

[2] Plaintiff raises a step-five error as a separate allegation of error in her opening brief.  ECF No. 13 at 7-8.  However, that allegation merely repeats the same allegations raised in the first allegation of error, regarding Plaintiff's left shoulder/arm/hand limitations.  Because the undersigned identifies no error in developing the RFC, there is correspondingly no error in formulating the hypothetical questions to the VE.

*One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

      **SUBMITTED** this 30th day of January, 2020.

 

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**